## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                          **Case No. 8:06-CR-389-T-27MAP**

**TAURINO ESPINOZA**

_____/

### ORDER

In April 2014,  the United States Sentencing Commission ("Commission") promulgated and submitted to Congress Amendment 782 to the United States Sentencing Guidelines, which reduced the sentencing guidelines for most federal drug trafficking offenders. Specifically, Amendment 782 reduced by two levels the offense levels in USSG § 2D1.1(c)'s Drug Quantity Table.  In July 2014, the Commission promulgated Amendment 788 and amended USSG § 1B1.10, which made Amendment 782 retroactive (effective November 1, 2014) but delayed until November 1, 2015 the effective date for orders reducing prison terms based on Amendment 782. *See United States v. Peak*, 579 Fed. Appx. 888, 891 n.1 (11th Cir. 2014).

Before the Court is Defendant's Motion for Sentence Reduction Under Amendment 782 (Dkt. 55) and the Government's response (Dkt. 58). In his motion, Defendant seeks a sentence reduction based on Amendment 782. Additionally, Defendant seeks release from custody prior to November 1, 2015, the delayed release date selected by the Commission in its policy statement, USSG § 1B1.10(e). While the Government agrees that Defendant is eligible for the two level reduction under Amendment 782, and does not oppose a reduced sentence of 120 months or time served, whichever is longer, it opposes Defendant's request to be released before November 1, 2015. (Dkt. 58, p. 2).

-1-

Defendant was sentenced before the effective date of Amendment 782. The retroactive application of Amendment 782 therefore reduces his sentencing guidelines range by two levels. Where, as here, a defendant's original sentence was based on a sentencing range which has subsequently been lowered by a retroactive guidelines amendment, the defendant's sentence may be reduced "if such a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission." 18 U.S.C. § 3582(c)(2). Accordingly, Defendant is eligible for a sentence reduction under Amendment 782 and his motion will be granted to that extent, effective November 1, 2015 pursuant to USSG § 1B1.10(e). The motion is DENIED to the extent Defendant seeks release from custody prior to November 1, 2015.

### Procedural history and Amendment 782 offense level reduction

Defendant pleaded guilty, pursuant to a Plea Agreement, to conspiracy to possess with the intent to distribute 500 grams or more of methamphetamine (Count One) in violation of 21 U.S.C. § 846 (Dkts. 25, 27). He was sentenced to 135 months in prison, followed by 5 years of supervised release (Dkt. 36). His conviction was affirmed on appeal (Dkt. 48).

Defendant's original sentencing guidelines range was 135 to 168 months, based on a Total Offense Level 31 and Criminal History Category III (Dkts. 33, 52).  As a result of Amendment 782, his offense level is reduced by two levels, resulting in an amended guidelines range of 120 to 135 months, based on a Total Offense Level 29, Criminal History Category III (Dkt. 52).[1]

### The November 1, 2015  delayed release date

In conjunction with Amendments 782 and 788, the Commission  amended USSG § 1B1.10, effectively delaying the release of inmates eligible for Amendment 782 sentence reductions until

---

[1] Count One is subject to a minimum mandatory term of imprisonment of 120 months.

November 1, 2015, at the earliest (USSG § 1B1.10(e)) ("The court shall not order a reduced term of imprisonment based on Amendment 782 unless the effective date of the court's order is November 1, 2015"). This policy statement is binding on the courts. *United States v. Melvin*, 556 F.3d 1190 (11th Cir.), *cert. denied*, 556 U.S. 1239 (2009) (courts are bound by applicable policy statements promulgated by the Commission in § 3582(c)(2) sentence reduction proceedings); *Dillon v. United States*, 560 U.S. 817, 830 (2010) (same).

The Sentencing Reform Act grants to the Commission the authority to issue binding policy statements concerning the retroactive application of a guidelines amendment. 28 U.S.C. §§ 994(u), 994(a)(2)(C); *Dillon v. United States*, 560 U.S. at 830. Congress directed the Commission to "specify what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u); *United States v. Colon*, 707 F.3d 1255, 1259 (11th Cir. 2013) ("Section 994(a) provides that the Commission must promulgate general policy statements that address 'the appropriate use of ... the sentence modification provisions set forth in section[ ] ... 3582(c) of title 18.'").[2] Further, Congress has directed that a court order reducing a defendant's sentence in this circumstance be consistent with those policy statements. 18 U.S.C. §3582(c)(2) (". . . court may reduce the term of imprisonment . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."). *See* USSG §1B1.10(a)(1) ("As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.").

---

[2] More than twenty years ago, the Supreme Court recognized that the Commission has "the unusual explicit power to decide whether and to what extent its amendments reducing sentences will be given retroactive effect," and that "[t]his power has been implemented in USSG §1B1.10 . . ." *Braxton v. United States*, 500 U.S. 344, 348 (1991).

It follows that the Commission was authorized by statute to promulgate the policy statement in USSG § 1B1.10(e), which specifies the circumstances by which Amendment 782 sentence reductions are to be implemented, including the November 1, 2015 delayed release date. *Dillon v. United States*, 560 U.S. at 825 ("By its terms, § 3582(c)(2) . . . provides for the 'modif[ication of] a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence *in circumstances specified by the Commission*.") (emphasis added).

All of this means, of course, that Defendant may not be released until November 1, 2015, at the earliest. Indeed, the Commission's commentary anticipated Defendant's argument to the contrary:

> *A reduction based on retroactive application of Amendment 782 that does not comply with the requirement that the order take effect on November 1, 2015, or later is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2)."*

USSG § 1B1.10, comment., n.6 (2014).

### Discussion

Defendant challenges the November 1, 2015 delayed release date on several grounds. First, pointing to the Commission's reasons for promulgating the delayed release date (among other reasons, to provide offenders with the opportunity to participate in reentry programs and transitional services, such as halfway houses), he contends that it would be contrary to the statutory prohibition against considering correction and rehabilitation in 18 U.S.C. § 3582(a) for the court to enforce §1B1.10(e). He argues that "when modifying a sentence pursuant to §3582(c)(2), it is 'not appropriate' for the Court to use imprisonment to promote 'correction and rehabilitation,'" citing § 3582(a). This contention is foreclosed by the plain language of that statute.

The statutory prohibition against considering correction and rehabilitation applies to the *imposition* of a term of imprisonment, not a *reduction* in sentence:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

18 U.S.C. § 3582(a).[3]

On the other hand, section 3582(c)(2) expressly applies to "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." A distinction must therefore be drawn between the imposition of a sentence, in which correction and rehabilitation may not be considered, and a reduction of that sentence under § 3582(c)(2) based on a retroactive guidelines amendment.[4]  In that circumstance, policy statements such as § 1B1.10(e) must be followed by the court, notwithstanding that correction and rehabilitation may have been motivating factors in the Commission's determination to delay the release of eligible offenders.

Defendant's reliance on *Tapia v. United States, supra,* is misplaced. Nothing in *Tapia* prohibits the consideration of corrections and rehabilitation in a § 3582(c)(2) sentence reduction

---

[3]  The statutory prohibition against considering rehabilitation in the imposition of a term of imprisonment has been acknowledged by the courts. *Tapia v. United States*, 131 S.Ct. 2382, 2388 (2011) (in determining whether to impose a term of imprisonment and the length of the term, courts "should consider the specified rationales of punishment *except for* rehabilitation, which it should acknowledge as an unsuitable justification for a prison term.")(emphasis in original): *United States v. Vandergrift*, 754 F.3d 1303, 1310 (11th Cir. 2014) ("[I]t is clear that *Tapia* prohibits any consideration of rehabilitation when determining whether to impose or lengthen a sentence of imprisonment."); *United States v. Harris*, 990 F.2d 594, 596 (11th Cir. 1993) ("Rehabilitative considerations have been declared irrelevant for purposes of deciding whether or not to impose a prison sentence and, if so, what prison sentence to impose.") (citing 28 U.S.C. §994(k)) and quoting *United States v. Mogel*, 956 F.2d 1555, 1563 (11th Cir. 1992)).

[4] The "statutory differences" between the two have been acknowledged by the Supreme Court. *Dillon v. United States*, 560 U.S. at 830 (". . . the statutory differences between the proceedings are highly significant.").

proceeding. *See United States v. Johnson*, 550 Fed. Appx. 844 (11th Cir. 2013) (*Tapia's* prohibition against "sentencing based on rehabilitation extends only insofar as a court may choose to lengthen a sentence for the purpose of promoting a defendant's rehabilitation," and public safety concerns are permissible considerations in a §3582(c)(2) proceeding).

I conclude, therefore, that enforcement of the November 1, 2015 delayed release provision in USSG § 1B1.10(e) is not prohibited by § 3582(a), since that section applies to the imposition of sentence, not a reduction or modification of a sentence.

**Commission's Statutory Authority**

Defendant's next contention fails for essentially the same reason as his first. He contends that the Commission exceeded its statutory authority in promulgating USSG § 1B1.10(e) because 28 U.S.C. § 994(k) prohibits the Commission from considering correction and rehabilitation when promulgating guidelines. *See* Dkt. 55, p. 7 (The "Sentencing Commission is a creature of statute and, accordingly, its powers are limited by the statute that creates it.")(citing *United States v. LaBonte*, 520 U.S. 751, 757 (1997)). Specifically, Defendant contends that the Commission delayed the release date of offenders eligible for Amendment 782 sentence reductions "to provide them with correctional treatment or rehabilitation services," in violation of the prohibition against considering correction and rehabilitation. Defendant once again blurs the distinction between imposition of a sentence and the reduction of a sentence under a retroactive guideline.[5]

---

[5] Defendant's reliance on *Tapia* is again misplaced. In deciding to delay the release of eligible offenders, the Commission focused on the practical administrative burdens and public safety concerns resulting from the immediate release of literally thousands of federal inmates and the need to have correctional services in place for their successful reentry. Nothing in *Tapia* prohibits the Commission from considering correction or rehabilitation when exercising its statutory authority under § 994(u) to "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment . . . may be reduced.

The plain language of the statute on which Defendant relies refutes his contention. Section 994(k) expressly applies to the imposition of a "sentence to a term of imprisonment":

> The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.

As noted, the Sentencing Reform Act requires the Commission to specify the circumstances in which and the amounts by which sentences may be reduced based on retroactive amendments, and "to issue policy statements governing sentence reductions." *Colon*, 707 F.3d at 1259 ("Section 994(a) provides that the Commission must promulgate general policy statements that address 'the appropriate use of ... the sentence modification provisions set forth in section[ ] ... 3582(c) of title 18.'"). The Commission exercised that authority in promulgating § 1B1.10(e).

**Judicial Review of Commission Policy Statements**

Defendant next contends that the Commission's selection of November 1, 2015 as the earliest release date for those eligible for an Amendment 782 sentence reduction was "arbitrary, capricious, and manifestly contrary to the Commission's statutory authority," citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984) (agency regulations given controlling weight unless "arbitrary, capricious, or manifestly contrary to the statute").

First, Defendant reasserts his argument that the delayed release provision in § 1B1.10(e) is contrary to the prohibition against considering "correctional treatment" in 28 U.S.C. § 994(k). Calling the delayed release provision "manifestly" contrary to the statute, Defendant urges that the Court "need not afford deference" to USSG § 1B1.10(e). For the reasons discussed earlier, this argument is without merit.

Next, relying on general principles of judicial review of agency decision-making similar to those applied under the Administrative Procedures Act ("APA"), Defendant contends that the selection of November 1, 2015 "was arbitrary and capricious because (1) the Commission's record is devoid of any evidence whatsoever as to why the Commission chose November 1, 2015 as the delayed release date, and, (2) the purported 'public safety' concerns are contrary to the evidence that was actually before the Commission, namely, the Commission's own study on recidivism rates." Defendant's contentions are rejected.

First, it is generally recognized that the Sentencing Commission is not an agency subject to the APA, but rather "an independent entity in the judicial branch." *United States v. Tercero*, 734 F.3d 979, 984 (9th Cir. 2013); *Wash. Legal Found. v. U.S. Sentencing Comm'n,* 17 F.3d 1446, 1450 (D.C. Cir. 1994) (unless specified by statute, the APA does "not apply to the Commission because it is a part of the judicial branch."); *United States v. Gomez,* 450 Fed. Appx. 811, 812 (11th Cir. 2011). Second, with respect to administrative procedures the Commission is required to follow, the Sentencing Reform Act distinguishes between the promulgation of a sentencing guideline and the promulgation of policy statements. *Id.*; *United States v. Adams,* 545 Fed. Appx. 659, 662 (9th Cir. 2013) ("After considering the differences between Guidelines and policy statements in 28 U.S.C. § 994(a), Congress imposed different requirements for the Commission's use of each tool."), *cert. denied*, 134 S.Ct. 1567 (2014).

Third, there is serious doubt as to whether Commission policy statements are subject to judicial review under the arbitrary and capricious standard. *Tercero*, 734 F.3d at 984 (APA's "arbitrary and capricious" standard inapplicable to Commission's promulgation of § 1B1.10 policy statement). Considering the statutory distinction between the promulgation of sentencing guidelines

and policy statements, at least one court has questioned whether those policy statements are subject to judicial review. *See United States v. Horn*, 679 F.3d 397, 409 (6th Cir. 2012) ("While it is questionable that we even have authority to review the Commission's retroactivity decisions under this standard, we assume without deciding that we do.").[6] And there is authority concluding that Congress has not authorized judicial review of action by the Commission concerning retroactivity under the arbitrary and capricious standard. *United States v. Reeves*, 717 F.3d 647, 649 (8th Cir. 2013) (citing *United States v. Johnson*, 703 F.3d 464 (8th Cir. 2013)).

In *Johnson*, the Eighth Circuit concluded that Congress has not authorized judicial review of Commission action on retroactivity under the APA:

> Because Congress has not authorized us to "hold unlawful and set aside" action by the Commission "found to be ... arbitrary, capricious, [or] an abuse of discretion," 5 U.S.C. § 706(2), we reject Johnson's argument that we may "disregard" the Commission's non-retroactivity determination as arbitrary and capricious.

*Johnson*, 703 F.3d at 468. That court did, however, caution that Commission policy statements would be subject to judicial review if the Commission issues an "irrational policy statement," which could implicate due process concerns. *Id.* The court quickly rejected, however, the argument that the Commission's failure to make Amendment 742 retroactive implicated due process rights, concluding that § 3582(c)(2) proceedings are not constitutionally required and therefore do not

---

[6] Notwithstanding its concern about whether Commission policy statements are subject to review under the arbitrary and capricious standard, the Sixth Circuit reasoned that policy determinations on retroactivity are arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*United States v. Horn,* 679 F.3d at 409 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

implicate a "constitutionally protected liberty interest." *Id.* at 471.[7]

In this Circuit, the arbitrary and capricious standard has been applied in the review of a sentencing guideline, as opposed to a policy statement. *United States v. Osburn*, 955 F.2d 1500, 1505 (11th Cir.) ("Generally, '[w]e review the rules with deference, and we may not substitute our judgment on policy matters for that of the Commission. But a Guideline that is arbitrary and capricious cannot be given effect in court.'" (citation omitted), *cert. denied*, 506 U.S. 901 (1992). Other than this statement, Circuit precedent is silent on whether Commission policy statements are subject to judicial review and if so, under what standard. And Defendant points to no statute authorizing judicial review of the Commission's policy statements.

In another context, the arbitrary and capricious standard has been applied in the review of agency policy statements, albeit pursuant to express statutory authority. *Ryder Truck Lines, Inc. v. United States,* 716 F.2d 1369, 1378 (11th Cir. 1983) ("As a general statement of policy, the Commission's action is reviewed by this court only to determine whether it is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law or in excess of the Commission's statutory authority.") (citing 5 U.S.C.A. § 706(2)(A)-(D)). Judicial review in that context "is limited to determining 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.*

Assuming, without deciding, that this standard of review applies to Commission policy statements, the questions are whether (1) its decision to delay the release of eligible offenders was rationally supported, (2) it considered relevant facts, and (3) it articulated a rational connection between the facts and its determination to delay the release of those offenders. I conclude, after a

---

[7] Defendant does not raise a due process argument.

review of the public hearings conducted by the Commission, that its decision to delay the release of eligible offenders meets these limited requirements and that § 1B1.10(e) meets the test of reasonableness.

**Rational support for delayed release**

The Commission determined that a delayed release was warranted because of the significant administrative burdens the retroactive application of Amendment 782 would impose on the courts, prosecutors, Probation and Pretrial Services, and the Bureau of Prisons, as well as the attendant public safety concerns about the release of thousands of federal drug trafficking offenders. The Commission observed that the "number of cases potentially involved is large," estimating that 46,000 offenders could benefit from Amendment 782. USSG Supp. to App. C. Amend. 788 at 87 (Reason for Amendment). The Commission's statistical studies estimated that 4,571 federal inmates would be eligible for immediate release if Amendment 782 was effective November 1, 2014, and another 8,178 inmates would become eligible for release within the first year. Noting that the administrative burdens of applying Amendment 782 retroactively would be significant, the Commission determined that the administrative burdens would be "manageable given the one-year delay in the effective date, which allows courts and agencies more time to prepare." *Id*.

The record demonstrates that this determination is rationally supported by the relevant evidence. During its June 10, 2014 public hearing[8], the Commission heard testimony from several invited witnesses addressing whether Amendment 782 should be retroactive. Those witnesses included the Chair of the Criminal Justice Committee of the Judicial Conference, a Deputy Chief

---

[8] *See Transcript of June 10, 2014 Public Hearing on Retroactivity of 2014 Drug Amendment.*
http://www.ussc.gov/amendment-process/materials-2014-drug-guidelines-amendment

United States Probation Officer, the United States Attorney for the Northern District of Georgia, the Director of the United States Bureau of Prisons, practicing attorneys, representatives of several advocacy groups, and law enforcement representatives.

Relevant to the November 1, 2015 delayed release, several witnesses voiced concerns about the impact retroactivity would have on the criminal justice system. For example, United States Attorney Sally Quillian Yates, on behalf of the Department of Justice, addressed the anticipated impact the immediate release of the anticipated 4,500 inmates would have on the criminal justice system:

> Full retroactivity would also place a significant burden on the courts and probation offices because, according to the Sentencing Commission data, full retroactivity would result in the immediate release of 4,571 inmates, and approximately 7,962 more inmates would be released in the first year than would otherwise be released without full retroactivity. The immediate influx of such a large number of inmates back into the community could also have significant public safety implications.

The Commission's findings concerning the substantial administrative impact the release of more than 12,000 offenders in the first year would have, likewise finds support in the testimony of the Honorable Irene M. Keeley, Chair of the Judicial Conference Criminal Law Committee.[9] Judge Keeley reported that the Committee would support the retroactive application of Amendment 782 without qualification "[i]f the necessary resources were available to address the workload from inmate petitions for retroactivity and the increased number of offenders supervised in the community. . . ." However, the Judge noted the lack of available resources and the fiscal climate confronting the judiciary:

---

[9] *See Testimony of Hon. Irene M. Keeley Presented to the United states Sentencing Commission on June 10, 2014, on the Retroactivity of the Drug Guideline Amendment.*
http://www.ussc.gov/amendment-process/public-hearings-and-meetings/20140610/agenda-june-10-2014-public-hearing

> The release of thousands of additional offenders to supervision when the system is already dealing with diminished resources and an increasingly risky offender population raises several public safety concerns."

And she added that releasing the offenders immediately with "no programming, with no plan for reentry" . . . would "almost guarantee a failure." *Id.* at 24-25; 71. Relevant to Defendant's challenge to § 1B1.10(e), Judge Keeley recommended a delayed release of eligible offenders:

> The Committee hopes that a six-month delay in cases being released to supervision will allow additional time for the system to be provided needed resources and fill probation officer vacancies. In addition, the additional time will allow the probation and pretrial services system to marshal its existing resources as much as possible, and to minimize the threat to community safety stemming from too many inmates being released without adequate planning and supervision.

While Judge Keeley recommended a six month release delay, the Commission heard from other witnesses whose agencies would be significantly impacted by the retroactive application of Amendment 782, and determined that a one year delay was appropriate. For example, the Director of the United States Bureau of Prisons described the substantial task of recalculating new projected release dates, formulating release plans, and arranging for residential reentry center placement for the inmates preparing to reenter society. *Transcript of June 10, 2014 Public Hearing on Retroactivity of 2014 Drug Amendment* at pp. 121-24.  As Director Samuels put it: "The more time we have, the better." *Id.* at 124.[10]

Public safety concerns permeated the public hearings on retroactivity, as evidenced by the questioning of Chief United States Probation Officer Quincy Avinger by members of the Commission. Likewise, safety was a prominent consideration of the Department of Justice when it

---

[10] As for Defendant's contention that there was no evidence that a delayed release actually promoted public safety, that is not required under the limited review accorded the Commission's decision. The inquiry is whether the Commission's delayed release decision is rationally supported by the evidence, not whether the evidence met some measure of proof.

recommended a limited retroactive application of Amendment 782:

> Foremost among these other policy considerations to be weighed in the retroactivity analysis is public safety. Because of public safety concerns that arise from the release of dangerous drug offenders, and from the diversion of resources necessary to process over 50,000 inmates, we believe that retroactivity in the drug amendment should be limited to lower-level nonviolent drug offenders without significant criminal histories.

> Limited retroactivity will ensure that release decisions for eligible offenders are fully considered on a case - by - case basis as is required, and that sufficient supervision and monitoring of released offenders will be accomplished by probation officers, and that the public safety risks to the community are minimized.
> . . .

> In making the retroactivity determination, the Commission should also consider the resources necessary to effectuate retroactivity and the corresponding negative impact on public safety from the resultant diversion of those criminal justice system resources.

June 19, 2014 Testimony of U.S. Attorney Sally Quillian Yates, p. 111-12.

Defendant's contention that the commission's "public safety concerns are contrary to the evidence that was actually before the Commission, namely, the Commission's own study on recidivism rates," is not persuasive. The anecdotal evidence that crack cocaine offenders released as a result of Amendment 750 without reentry plans fared well statistically when compared to those who served their entire sentence was considered by the Commission.   The number of offenders eligible for immediate release under Amendment 782, however, was noted by Judge Saris in her July 18th remarks[11]:

> Nonetheless, we recognize the reasonable concerns we have heard that releasing a large number of offenders within a short period of time can create risks. I believe the proposal we vote on today takes steps that will effectively address those risks, as well as reduce the difficulty of applying the change retroactively.

---

[11] *See Chief Judge Patti B. Saris, Chair, United States Sentencing Commission Remarks for Public Meeting, July 18, 2014.*   http://www.ussc.gov/amendment-process/materials-2014-drug-guidelines-amendment

And as noted, the importance of providing reentry plans and transitional services to eligible offenders to insure their successful transition into society was stressed by Judge Keeley, as well as Director Samuels of the Federal Bureau of Prisons. As the government correctly points out, the Commission also noted the Bureau of Prisons' statutory responsibility to "ensure, to the extent practicable, that the defendant will spend a portion of his or her term of imprisonment under conditions that will afford the defendant a reasonable opportunity to adjust to and prepare for his or her reentry into the community." 18 U.S.C. § 3624(C).

In sum, the decision to delay the release of offenders immediately eligible for sentence reductions as a result of Amendment 782 was rationally supported by the evidence considered by the Commission.

**Articulation of rational connection between the facts and delayed release**

Acknowledging "the reasonable concerns we have heard that releasing a large number of offenders within a short period of time can create risks," Judge Saris explained that the "delayed implementation" of Amendment 782 would address public safety concerns in three ways.

First, the delayed implementation was intended to provide judges more time "to consider the initial influx of motions for reduced sentences . . . time to carefully weigh each case, including considering the public safety implications of releasing any given offender early . . . and . . . enough time to obtain and review the information necessary to make an individualized determination." Additionally, the delayed implementation would give the government "adequate time to access information including regarding offenders' conduct in prison and object to sentence reductions when prosecutors believe public safety may be at risk." Judge Saris referenced testimony "from the judiciary that additional time would be essential to facilitate the kind of consideration that is required."

Second, she explained that "the delayed implementation will ensure that the Bureau of Prisons has enough time to give every offender the usual transitional services and opportunities that help increase the chances of successful reentry into society." Judge Saris explained that "Officials from the Bureau of Prisons have emphasized that these transitions help ensure that offenders have the services, support, and skills they need to live productive lives," and recalled testimony "that, without a period of delay when a guideline reduction was applied retroactively in the past, some offenders were released without a reentry plan and services, [and that] special instruction on timing in the proposed amendment . . .  will mean that, this time, no offenders will be released without having had the opportunity for this regular transition."

Third, she explained that the delay will allow the Office of Probation and Pretrial Services adequate time to prepare so that released offenders can be effectively supervised. She summarized that "with time to prepare, the Office of Probation and Pretrial Services will be able to ensure more effective supervision, which will increase the chance of successful offender reentry and help ensure public safety." And she recalled testimony from judges and probation officers that additional time was "essential to protecting public safety, and today's proposed amendment directly addresses that concern." Finally, she acknowledged that the delayed release would "reduce somewhat the number of offenders who will benefit" but that "this limitation is necessary to ease the difficulty in applying the amendment retroactively by enabling appropriate consideration of individual petitions, ensuring sufficient staffing and preparation to effectively supervise offenders upon release, and allowing for effective reentry plans."

In sum, in explaining the Commission's determination that a "one year delay in the effective date . . . is needed,  Judge Saris articulated a rational connection between the facts and the decision to delay the release of eligible offenders.

**The delayed release is reasonable**

As noted, the Commission is authorized by statute to "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced" when it determines to reduce the term of imprisonment recommended in the guidelines. 18 U.S.C. § 994(u). I conclude that the delayed release provision in USSG § 1B1.10(e) is consistent with this directive and therefore the Commission acted within its statutory authority.

Certainly, considering the substantial impact that the immediate release of more than 4,500 inmates would have on the courts and probation offices, and that an additional 8,100 offenders would be released in the first year, it was reasonable for the Commission to delay their release for one year so that resources could be marshaled, U.S. Probation, prosecutors, and the courts could prepare for the influx in reduction motions, and the Bureau of Prisons could provide necessary re-entry and transitional services. The policy statement in § 1B1.10(e) therefore passes the test of reasonableness. Accordingly, I conclude that the delayed release provision in §1B1.10(e) was not arbitrary and capricious.

**Separation of powers**

Finally, Defendant contends that the November 1, 2015 delayed release violates the separation of powers doctrine. For essentially the same reasons the delayed release provision in USSG §1B1.10(e) survives Defendant's other challenges, his separation of powers argument fails. The Commission is expressly authorized to specify "what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u). The delayed release provision in § 1B1.10(e) is one of those "circumstances." *See United States v. Colon*, 707 F.3d at 1259. As noted, Congress authorized the Commission to impose such

restrictions, "and doing so does not violate any separation of powers principle." *Id.* at 1260.[12]

### Conclusion

After considering the factors in section 3553(a), Defendant's Motion for Sentence Reduction Under Amendment 782 (Dkt. 55) is GRANTED to the extent that his sentence of imprisonment is reduced to 120 months or time served, whichever is longer. *See* USSG § 1B1.10(b)(2)(C) ("In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served."). This reduction is effective November 1, 2015 pursuant to USSG § 1B1.10(e). All other terms and conditions of the original sentence remain the same. The motion is DENIED to the extent Defendant seeks a release from imprisonment prior to November 1, 2015.

**DONE AND ORDERED** this _20th_ day of February, 2015.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record

---

[12] I find no intrusion into the district courts' Article III authority by virtue of the Commission's binding policy statement in § 1B1.10(e). Indeed, a district court is not obliged to grant relief under Amendment 782. As noted, during the Commission's July 18, 2014 public hearing, Judge Saris correctly pointed out that "[b]efore any offender would be released, a federal judge would have to decide that the offender would not pose a public safety risk and whether release is appropriate."